UNITED STATES of America, Appellee,

v.

**Juan Carlos SANTANA, Appellant.**

No. 88–2389.

United States Court of Appeals,
Eighth Circuit.

Submitted April 10, 1989.

Decided June 15, 1989.

Norman Wilkinson, Fort Smith, Ark., for appellant.

William M. Cromwell, Fort Smith, Ark., for appellee.

Before BOWMAN and WOLLMAN, Circuit Judges, and HENLEY, Senior Circuit Judge.

WOLLMAN, Circuit Judge.

Juan Carlos Santana appeals his convictions for conspiracy to distribute cocaine, pursuant to 21 U.S.C. § 846, possession with intent to distribute cocaine, pursuant to 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, and distribution of cocaine, pursuant to 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. We affirm the district court's[1] judgment.

In the fall of 1987, the Fort Smith, Arkansas, Police Department and the Drug Enforcement Administration (DEA) initiated an undercover investigation of Santana, David Garcia, and others. On October 26, 1987, a DEA agent taped a telephone conversation between himself and Santana during which they discussed a sale of approximately three ounces of cocaine in exchange for $5,000.00. Three days later, two DEA agents met with Santana and discussed the proposed sale. After a period of delay, the agents and Santana went to Garcia's home, where Santana handed three ounces of cocaine to the agents. In exchange, the agents gave $2,500.00 to Santana and $2,500.00 to Garcia.

The jury found Santana guilty of three cocaine-related offenses. The district court sentenced him to nine years' imprisonment for each offense, the sentences to run concurrently. The court also ordered Santana to pay a special assessment of $150.00 and restitution to the DEA in the amount of $2,500.00.

■ For reversal, Santana first claims that the district court admitted evidence of prior acts "to show action in conformity therewith," in violation of Fed.R.Evid. 404(b). The government, however, claims that the prior acts evidence was not used to show conforming behavior, but rather to show intent.

The evidence at issue here is testimony given by one of the DEA agents who purchased the three ounces of cocaine from Santana. The agent testified that on October 7, 1987, he purchased two one-eighth ounce quantities of cocaine from Santana, and that on October 8, 1987, he purchased one-half an ounce of cocaine from Santana. Following the agent's testimony, the district court instructed the jury that the evidence was admitted "for the purpose of showing, to the extent you think it shows, a plan or intent or knowledge on the part of [the defendant]."

Santana's intent was a material element in both the charge of conspiracy to distribute and the charge of possession with intent to distribute cocaine. The DEA agent's testimony was relevant because testimony of prior drug transactions is admissible to prove that a defendant acted knowingly and intentionally. *United States v. Maichle*, 861 F.2d 178, 180 (8th Cir.1988). With regard to the similarity of acts, it is difficult to imagine acts that are more alike. The cocaine transactions took place between the same parties and within the same month. The district court thus properly admitted the DEA agent's testimony regarding Santana's prior cocaine dealings.

■ Santana's second contention is that the government improperly commented on his failure to subpoena under Fed.R.Crim. Pro. 17 or depose under Fed.R.Crim.Pro. 15

---

**1.** The Honorable Morris S. Arnold, United States District Judge for the Western District of Arkansas.

an alibi witness that Santana had not called to testify. At trial, Santana claimed that he was in Miami from October 20 through October 30 of 1987, staying with a friend, Benjamin Gonzales. In closing argument, the government noted that Gonzales had not been called to testify and that even if Gonzales "didn't want to get involved in anything," as Santana alleged, Santana could have subpoenaed or deposed Gonzales.

We find that the prosecutor's statements were not improper. The record indicates that Santana and his attorney had information regarding Gonzales' location, yet they did not obtain testimony from him. Transcript at 177–78. "The prosecutor is free to comment on the failure of the defendant to call an available alibi witness." *United States v. Schultz,* 698 F.2d 365, 367 (8th Cir.1983); *see also Rush v. United States,* 795 F.2d 638, 640 (8th Cir.1986); *Moore v. Wyrick,* 760 F.2d 884, 886 n. 2 (8th Cir. 1985).

 Santana's final contention is that he was prejudiced by the presence of a television in the courtroom and by a government witness holding video tapes during his testimony. Prior to trial, Santana had filed a discovery motion under Fed.R.Crim. Pro. 16(a)(1)(C) requesting the government to disclose any documents or tangible objects. The government did not disclose the existence of any video tapes in its response to the motion. During trial, however, the government discovered that surveillance video tapes existed and asked a witness to bring them when he testified. The witness brought the video tapes and testified that he had personally observed Santana in Fort Smith from October 20 through October 28, 1987, and that the tapes demonstrated Santana's presence in Fort Smith on those dates. The government also brought a television into the courtroom, in anticipation of showing the tapes. Ultimately, however, the government decided not to offer the tapes into evidence. Santana now claims that the mere presence of the video tapes and the television was prejudicial because he had told the jury several times there were no video tapes, in an attempt to

show that "if the transaction happened the way the Government claimed it happened, there should have been some video tapes." Brief for Appellant at 24.

While the government did not handle the matter of the tapes as well as it might have, we conclude that in the light of the substantial evidence of Santana's guilt, any prejudice Santana may have suffered by the presence of the tapes and television was minimal at most and does not warrant reversal of his conviction.

The judgment of the district court is affirmed.