**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                      No. 97-4793

ANTHONY MITCHELL,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
T. S. Ellis, III, District Judge.
(CR-97-130-A)

Submitted: September 8, 1998

Decided: October 6, 1998

Before NIEMEYER, HAMILTON, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Gregory Bruce English, ENGLISH & SMITH, Alexandria, Virginia,
for Appellant. Helen F. Fahey, United States Attorney, Peter D.
Hardy, Special Assistant United States Attorney, Alexandria, Vir-
ginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

Anthony Mitchell appeals his conviction for one count of assault resulting in serious bodily injury, in violation of 18 U.S.C.A. § 113(a)(6) (West Supp. 1998) (count two of the indictment). Mitchell was also indicted for one count of assault with intent to kill while armed, in violation of 18 U.S.C.A. § 113(a)(1) (West Supp. 1998) (count one), and one count of prisoner possession of a shank, in violation of 18 U.S.C.A. § 13 (West Supp. 1998), assimilating Va. Code Ann. § 53.1-203(4) (Michie 1994) (count three). At his first jury trial, the jury found Mitchell guilty of count three. The court declared a mistrial as to the remaining counts because the jury had deadlocked on them. The Government retried Mitchell on counts one and two. The jury found Mitchell guilty of count two and again deadlocked on count one. The Government moved to dismiss count one without prejudice, which the district court granted. The district court sentenced him on counts two and three, and Mitchell filed a timely notice of appeal. He appeals the conviction on count two only, alleging that the district court erred in making several evidentiary rulings, in failing to ask a requested question during the jury venire, and in failing to grant a mistrial for a Brady violation in the first trial. Finding no error, we affirm.

The charges arose from an incident that occurred at the maximum security facility of the Lorton Correctional Complex. Correctional officers took several inmates to the recreation yard including Mitchell and Tyrone Johnson. Shortly thereafter, Mitchell stabbed Johnson several times, causing him serious injury. Several officers testified at trial that they saw Mitchell lunging toward Johnson and Johnson backing away from Mitchell in a crawling fashion. Officers also testified that they saw Mitchell throw an item over the fence. Officers found a shank in the area where Mitchell threw the item. At trial, Mitchell testified and alleged that he was acting in self defense.

Mitchell first alleges that the district court erred by failing to grant him a mistrial after Major Steven Smith, the then acting warden for operations at Lorton, described the maximum security facility at Lorton as "a facility surrounded by a wall, housing 600 inmates, which

2

are the worst . . . ." (JA 559). The court gave a curative instruction to the jury immediately after Smith's remark and stated "[a]ll right, ladies and gentleman, disregard the testimony concerning the nature of the individuals in the Maximum Security [facility]. It is not really what the case is about. It is unnecessary for your consideration of the facts before you." (JA 560-61). Mitchell claims that the curative instruction was completely inadequate and makes a conclusory argument that the remark denied him a fair trial.

The remark cannot be found to have deprived Mitchell of a fair trial. We review the court's decision to grant or deny a mistrial for an abuse of discretion. See United States v. Dorsey, 45 F.3d 809, 817 (4th Cir. 1995). A district court abuses its discretion only when the defendant demonstrates prejudice from the remark and that a jury could still find guilt while following the curative instruction. Id. (quoting United States v. West, 877 F.2d 281, 287-88 (4th Cir. 1989)). A review of the record does not suggest any probability that the jury did not follow the instruction or that the remark was highly prejudicial.

Next, Mitchell alleges that the district court erred by preventing him from cross-examining Corporal Day regarding a prior reprimand. We review the district court's evidentiary rulings for an abuse of discretion. See United States v. ReBrook, 58 F.3d 961, 967 (4th Cir. 1995). The Government gave the defense a letter disclosing that Corporal Day received a letter of admonition for inexcusable negligence of duty for failing to strip search inmates prior to the inmates going out into the recreation yard. The reprimand was for one occasion on which Day failed to search inmates and one of the inmates then produced a shank from his clothing in the recreation yard.

The Government called Corporal Day to testify. On direct examination, Day testified that he did not remember whether he searched the victim on the day of the stabbing before Mitchell entered the yard. He stated that, if he did not, another officer would have performed a strip search on Mitchell because that was the standard procedure. During cross-examination, defense counsel approached the bench and sought permission to impeach Day by asking about the letter of admonition. The district court declined to allow defense counsel to inquire into the matter because Day had not stated that he always performed

3

a strip search on inmates entering the yard. The district court noted that it would be improper for defense counsel to lead Day into making that statement.

The Government called Day as part of its case in rebuttal. On redirect, the Government did not ask him any questions regarding searches of inmates entering the yard. Day testified to the search of the yard after the incident to retrieve any weapons. On recross-examination of Day, defense counsel asked Day if he always performed his assigned duties and Day stated that he did. The court told defense counsel in a sidebar conference that that was the same question that it previously ruled improper. The court then instructed the jury to disregard the question and answer because they were irrelevant.

On appeal, Mitchell argues that the court's ruling was improper because the reprimand might show bias in Day's testimony, assuming that Day feared a second reprimand if he stated that he did not search the inmates on this occasion. Mitchell argues that the evidence also should have been admitted so that the jury would not be misled into believing that Lorton officers always carry out their duties.

First, the district court correctly noted that the Government's direct examination of Day did not include questioning on whether he always searched the inmates before they entered the yard. The Government only questioned Day regarding the incident which took place that day. Day did not affirmatively assert that he always searched the inmates prior to the entry into the yard. Cross-examination is limited to the subject matter of the direct examination, except in matters of credibility and when the court, in its discretion, allows for additional inquiry. See Fed. R. Evid. 611(b).

In any event, even if the district court erred in disallowing questioning regarding the reprimand, the error was harmless. See United States v. Whittington, 26 F.3d 456, 466 (4th Cir. 1994) (citation omitted) (holding that, even if the trial court abuses its discretion when making an evidentiary ruling, this court will not reverse a conviction if the error was harmless). On recross-examination, defense counsel was able to elicit testimony from Day that Lorton inmates frequently possess shanks, that prisoners possess shanks in surprising circum-

4

stances, and that Lorton officers do not always find all the shanks possessed by the prisoners. This testimony established that it could be possible for the victim to have had a shank in the yard without the officers' knowledge. Mitchell's assertion that the reprimand would show bias in Day's testimony because he would be fearful of a second reprimand is speculative at best, particularly considering the thorough investigation previously conducted. Therefore, we find that the district court did not commit reversible error in refusing to admit Day's reprimand.

Mitchell next argues that the district court abused its discretion in failing to grant a mistrial when the Government referred to his testimony before "another jury" instead of the required language of "another proceeding." During pre-trial proceedings, the district court ruled that the parties could not refer to the previous "trial" of the Defendant, but could refer to a "prior proceeding." During cross-examination of Mitchell, the Government inadvertently referred to Mitchell's prior testimony before "another jury." Immediately thereafter, the trial court called a bench conference and notified the Government that it had just violated the court's ruling that the first trial must be referred to as a prior proceeding. The Government stressed that the error was unintentional, which the court accepted. Mitchell proffered a curative instruction, which the court rejected. Instead, the court instructed the jury:

> Ladies and gentlemen, you are to disregard any reference [the Government] made to another proceeding. That is of no concern to you and should not enter into or influence your deliberations in any way. The law requires you to render your verdict based only on the evidence you see and hear presented in this trial.

(JA 769).

In light of the judge's immediate curative instruction, which the jury is presumed to have followed, see Greer v. Miller, 483 U.S. 756, 766 n.8 (1987), the isolated nature of the statement, and the significant evidence of guilt, the prosecutor's misstatement did not prejudice Mitchell to the extent that it deprived him of a fair trial. See United States v. Bennett, 984 F.2d 597, 608 (4th Cir. 1993). As a result,

5

Mitchell has failed to show prejudice, and cannot demonstrate an abuse of discretion on the part of the district court in denying the motion for a mistrial. See Dorsey, 45 F.3d at 817.

Mitchell's last argument regarding the trial court's evidentiary rulings is that the court erred in allowing the Government to impeach Mitchell on cross-examination by asking him about his silence as to certain issues when he was interviewed directly after the incident. Lieutenant Henry Williams, a zone supervisor at Lorton, testified that immediately after Mitchell stabbed the victim, he advised Mitchell of his rights under Miranda v. Arizona, 384 U.S. 436 (1966), and interviewed Mitchell after he agreed to talk. Williams testified that during the interview Mitchell told him that he stabbed Johnson because Johnson had been bothering him for some time and that he was left with no alternative but to attack Johnson. Williams also testified that, during the interview after the attack, Mitchell never mentioned that Johnson possessed a weapon, that Johnson's shank was left in the yard, or that he acted in self defense.

Mitchell testified that before the stabbing Johnson threatened to sodomize him. He also testified that immediately before the stabbing he had refused Johnson's request for sex. Mitchell testified that while out in the recreation yard, Johnson again made aggressive homosexual advances. He then pulled a knife out from somewhere on his person and came at Mitchell to attack him. Mitchell testified that he fended off the attack, and wrestled with Johnson while Johnson attempted to stab him. He stated that he pushed Johnson back and then ran to a place in the yard where he had secreted a shank approximately two and a half years earlier. Mitchell testified that he stabbed Johnson as Johnson continued to come toward him because he was afraid.

On cross-examination, the Government attempted to impeach Mitchell by demonstrating that the story he was offering at trial contradicted what he told Officer Williams. In response to the Government's questions, Mitchell admitted that he never told Williams that Johnson had threatened to sodomize him, that Johnson attacked him first with a shank, or that the shank used by Johnson was still lying in the yard just after the incident occurred.

6

Mitchell objected to this line of questioning as improper because he deemed it to be use of his post-Miranda silence for impeachment purposes in violation of the Due Process Clause of the Fourteenth Amendment. See Doyle v. Ohio, 426 U.S. 610, 617-18 (1976). Doyle, however, does not bar questioning about statements made by a defendant who voluntarily spoke after receiving valid Miranda warnings. See Anderson v. Charles, 447 U.S. 404, 408 (1980). A defendant's silence as to certain subjects while voluntarily speaking after Miranda warnings is not the same silence protected by Doyle. Id. at 409. Several circuits have held that the Government may cross-examine a defendant regarding inconsistencies between trial testimony and prior statements. See, e.g., United States v. Butler, 924 F.2d 1124, 1129-30 (D.C. Cir. 1991); United States v. Makhlouta, 790 F.2d 1400, 1409 (9th Cir. 1986); United States v. Schulz, 698 F.2d 365, 367 (8th Cir. 1983); Grieco v. Hall, 641 F.2d 1029, 1034 (1st Cir. 1981). We therefore do not find any error by the district court in allowing questioning on the inconsistencies between Mitchell's statements to Williams during the interview after the incident and Mitchell's testimony at trial.

Next, Mitchell argues that the trial court committed reversible error when it refused to ask prospective jurors whether they could presume that the Defendant was innocent even though he had previously been convicted of a crime. This court reviews a trial court's decisions at voir dire for abuse of discretion. See Rosales-Lopez v. United States, 451 U.S. 182, 188-89 (1981). A district court does not abuse its discretion by asking a general question that is satisfactory to address a specific prejudice issue feared by the defendant. See United States v. Lancaster, 96 F.3d 734, 739 (4th Cir. 1996) (citations omitted), cert. denied, ___ U.S. ___, 65 U.S.L.W. 3569 (U.S. Feb. 18, 1997) (No. 96-6450). Mitchell argues that this case of a prisoner alleging self defense in the stabbing of another prisoner dictates that the voir dire include specific questions to reveal bias. Mitchell does not adequately support his argued need for specific questions. Indeed, Lancaster was an inmate assault case similar to this case.

We find that the district court did not abuse its discretion in this instance. Although the court did not ask the exact question posed by defense counsel, it posed questions about the venire's involvement with law enforcement, investigated potential jurors' opinions of Lorton when disclosed at the bench, and their inability for any other rea-

7

son to render a fair and impartial verdict. Because the court addressed the concerns reflected in Mitchell's voir dire question, there was no error in its omission.

Finally, Mitchell argues that the district court erred when it denied his motion to dismiss counts one and two of the indictment with prejudice, due to prosecutorial misconduct. After Mitchell's first trial, which resulted in a hung jury on counts one and two and therefore a mistrial, and before the second trial, the Government disclosed several exculpatory evidentiary items to the defense that the first team of Government prosecutors did not disclose. Based upon this disclosure, Mitchell moved to dismiss the remaining two counts of the indictment. Mitchell argues that the Double Jeopardy Clause is implicated in this case because, if he had had the materials, he would have been acquitted. Mitchell partially bases this assumption on his opinion that the Government prosecutors were not as well prepared in the first trial and subsequently had more time to prepare for the second trial. Mitchell also urges this court to announce a new rule for Brady violations.

The Double Jeopardy Clause does not prevent a retrial after a mistrial due to a deadlocked jury. See Richardson v. United States, 468 U.S. 317, 324 (1984). While the Double Jeopardy Clause bars a retrial after the prosecution has acted in bad faith and deliberately provoked the defendant's motion for a mistrial, that is not applicable to the sequence of events in this case. See United States v. Borromeo, 954 F.2d 245, 247 (4th Cir. 1992).

The proper remedy for a Brady violation is another trial, not a dismissal of the charges. See California v. Trombetta, 467 U.S. 479, 486-87 (1984). This court has addressed a nearly identical scenario and found that the second trial cured any errors caused by withholding exculpatory material. See United States v. Borokinni, 748 F.2d 236, 238 (4th Cir. 1984). We decline Mitchell's invitation to disregard precedent and create a new remedy for Brady violations in these circumstances.

The conviction is therefore affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the deci-

8

sional process.

AFFIRMED

9