**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0321n.06
Filed: June 5, 2008

No. 07-5655

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| **WILLIAM ABLES,** | ) | **O P I N I O N** |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE:    ROGERS, COOK, McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.** After a law enforcement search of defendant William Ables' residence revealed ammunition, a federal grand jury returned a one-count indictment that charged Ables with being a felon in possession of ammunition. The district court subsequently denied Ables' motion to suppress the evidence and statements resulting from that search, finding that Ables' live-in girlfriend had actual authority to consent to the search and that her consent was voluntary. During the course of Ables' trial, the district court also denied his motion for a mistrial, finding that the government's question about whether Ables' son was in the hallway of the courthouse did not provide sufficient grounds for a mistrial.

Subsequently, a jury convicted Ables of being a felon in possession of ammunition as charged in the indictment. The district court sentenced Ables to 48 months' imprisonment followed

by three years of supervised release. On appeal, Ables argues that the district court erred in denying his motions to suppress and for a mistrial.

**BACKGROUND**

In April 2005, Agent Steve Wiley of the Bureau of Alcohol, Tobacco, Firearms and Explosives received information that Ables had firearms and sold drugs from his residence, a trailer. In May 2005, Wiley conducted a criminal history search and determined that Ables previously had been convicted of a felony.

In November 2005, Wiley decided to act on the previously acquired information about Ables. Specifically, on November 2, 2005, he and four other officers went to Ables' residence at approximately 7:15 p.m. When the officers arrived at the residence, a dog was running around the yard and a woman named Cheryl Jobe met them at the front door.[1] The officers asked to enter the residence to get away from the dog, and immediately upon entering the trailer, Wiley noticed a shotgun shell sitting on a stereo speaker.

Wiley asked Jobe what her connection was to the trailer and she explained that she had lived with Ables in the trailer for seven or eight months as Ables' girlfriend. She explained that she seldom left the residence, kept her belongings at the residence, frequently spent the night in the master bedroom with Ables, and had access to all areas of the trailer. Jobe also indicated to the

---

[1]Because Wiley and Jobe were the only witnesses who testified at the suppression hearing, this account of the facts is based on a combination of their testimony, testimony that the district court and the parties acknowledged was factually largely similar.

officers that the residence belonged to Ables, that she did not pay the bills, and that she did not have a set of keys for the residence.

Because Ables was not present at the time and Jobe had control of the residence, the officers requested Jobe's consent to their search of the trailer. Wiley presented Jobe with a consent to search form and asked her to sign it. She proceeded to read the form aloud to the officers, but she was hesitant to sign it. Jobe told the officers that she was nervous because officers were present, that she had made bad decisions in the past, and that if she did not consent to the search then the officers would just return with a search warrant anyway. However, Jobe ultimately signed the form.

Wiley testified that Jobe appeared sober at the time of consent. He also testified that while Jobe might have seen holstered weapons on officers, the officers' guns were only drawn when the officers felt it necessary to check a room. While the officers searched, Jobe remained in the front room with an officer in the event she decided to stop the search.

On August 28, 2006, a federal grand jury indicted Ables on one count, charging him with being a felon in possession of ammunition, in violation of 18 U.S.C. §§ 922(g) and 924(a)(2). After holding a hearing on Ables' motion to suppress on November 7, 2006, the district court issued an oral ruling denying his motion to suppress. The district court also entered a written order, adopting its oral findings and rulings on the motion to suppress.

At trial, Wiley testified to essentially the same facts as he did at the suppression hearing. He stated that immediately upon entering the house, he saw what appeared to be a 12-gauge shotgun shell sitting on a speaker and later seized another round of 12-gauge ammunition inside a breadbox. Two other officers testified that more ammunition was found in the master bedroom. Seven days

after the search, on November 9, 2005, Ables voluntarily came to talk with Wiley at his office.

Wiley testified that Ables said that the ammunition found at his house was his and that while he was

aware that he was prohibited from possessing firearms, he was not aware that he was prohibited from

possessing ammunition.

During the course of the trial, Ables testified in his own defense. On direct-examination,

Ables claimed that the ammunition was his son's, not his. On cross-examination, the government

questioned Ables about his son. When the government asked a question about whether it was Ables'

son in the hallway of the courthouse, defense counsel objected and later made a motion for a mistrial

on the basis of that question. During the arguments to the district court regarding the motion for a

mistrial, the district court asked whether defense counsel's ground for the mistrial was "[t]he fact

that the jury may have seen the defendant's son in the building?" J.A. 190. Defense counsel

responded that:

> Not the fact that they may have seen him, Your honor, but the fact that Mr.
> Powell made reference to him and his description and his location in his questioning
> brings up -- Since the child did not testify, that brings in -- He was able to ask Mr.
> Ables about how big his son was and how old his son was, and I think all that was
> [fine] -- but to refer to a particular child that was not brought in, that was not a
> witness, that their observation of him would have no bearing on this case and should
> have no bearing on this case because he was not part of the proof in this case. There
> were no pictures presented. He was not brought in as a witness; yet, you know, Mr.
> Ables described him and he was mentioned, and that's fine.
>
> But to refer to a particular child with glasses in the hallway and he has been
> here, number one, I submit that puts in the mind to the jury they're to -- now they're
> going out in the hallway and they're going to look at him, which is exactly what the
> court has instructed them they can't do, which is go outside and do additional
> research, similar to going to the scene, I would submit.

> And also it may raise in their mind, well, if he was here, why didn't he testify, which, of course, puts an additional burden on the defendant that should not be there and was, in essence, inferred, I would submit, by the questioning.

J.A. 190-91. The district court denied the motion for a mistrial, finding that it had no indication that any of the jurors saw Ables' son and, in any event, its instruction to consider the evidence presented in the courtroom should suffice.

The jury subsequently convicted Ables as charged in the indictment. In May 2007, the district court sentenced Ables to 48 months' imprisonment followed by three years of supervised release. This timely appeal followed.

## ANALYSIS

**Motion to Suppress**

We review a district court's denial of a motion to suppress under two "complementary standards." *United States v. Miller*, 314 F.3d 265, 267 (6th Cir. 2002) (citation omitted). Findings of fact are reviewed for clear error while conclusions of law are reviewed *de novo*. *See United States v. Dillard*, 438 F.3d 675, 680 (6th Cir. 2006) (citation omitted). A factual finding is clearly erroneous when, after reviewing the entire evidence, this court is left with the definite and firm conviction that a mistake has been committed. *See United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999).

On appeal, Ables argues that the district court erred in two ways with respect to its denial of his motion to suppress by finding that (a) Jobe's consent to search Ables' residence was voluntary and intelligent; and (b) the police officers had a reasonable basis to conclude that Jobe had the authority to consent to the search.

### *Voluntary and intelligent consent*

The determination of "whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion . . . is a question of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). Accordingly, "the district court's decision regarding consent will not be overturned unless it is clearly erroneous." *United States v. Bueno*, 21 F.3d 120, 126 (6th Cir. 1994) (citation omitted).

To determine if consent was voluntary, a district court must look at the totality of the circumstances and examine the following factors: "the age, intelligence, and education of the individual; whether the individual understands the right to refuse to consent; whether the individual understands his or her constitutional rights; the length and nature of detention; and the use of coercive or punishing conduct by the police." *United States v. Worley*, 193 F.3d 380, 386 (6th Cir. 1999) (citation omitted).

Ables argues that, in permitting the search, Jobe acquiesced to the officers' authority rather than voluntarily consented. The district court found that:

> [U]nder the circumstances the consent was, in fact, voluntary while she, Ms. Jobe, was reluctant and nervous, she was told the she had a right to refuse consent, she gave it anyway. She was told that she could stop them at anytime, she did not do that. She read the consent form, she initialed each line, she signed the form, and the fact that she now wishes she hadn't done that is not sufficient to result in a suppression of the evidence.

J.A. 78-79. There is no basis in the record to conclude that the district erred in determining that Jobe was of the proper age, education, and intelligence to understand her rights. Nor is there any evidence that Jobe did not understand the officers' questions or the nature of the request to search the

residence. There is also no evidence that the officers ever threatened Jobe or attempted to coerce her into giving her consent; rather the testimony from both Wiley and Jobe indicated that, as the district court described, "they were having a cordial and reasonable conversation with each other." J.A. 77.

To the extent Jobe contends that her subjective belief that the officers would search the trailer anyway, *see* J.A. 86, is grounds to find that the officers acted coercively, her argument fails. *See United States v. Ivy*, 165 F.3d 397, 403 (6th Cir. 1998) ("[A]n 'agent's statements to the effect that he would obtain a warrant if [the suspect] did not consent to the search does not taint [the suspect's] consent to a search.'") (citation omitted). Here, Jobe, *not* the agents, made a statement that officers would just return with a search warrant if she did not consent to the search.

Moreover, Ables' reliance on *Worley* to argue that Jobe simply was acquiescing to the officers' authority is also unpersuasive. In *Worley*, we held that "the district court did not commit clear error in granting Worley's motion to suppress after determining that his statement, 'You've got the badge, I guess you can,' did not indicate consent to the search." 193 F.3d at 387. In contrast to Worley, Jobe was informed of her right to refuse to consent to the search as evidenced by her reading aloud the consent form and signing it, and the officers confronted Jobe in a private residence as opposed to an airport at issue in *Worley* where "it [is] easy for implicit threats or subtle coercion to exert tremendous pressure on an individual to acquiesce to the officer's wishes." *Id.* (citations omitted).

Accordingly, it cannot be said the district court erred in finding that Jobe's consent was made both voluntarily and intelligently.

***Authority to consent***

The authority to consent is a question of law to be reviewed *de novo*. *See United States v. Hudson*, 405 F.3d 425, 431 (6th Cir. 2005). The Fourth Amendment generally prohibits warrantless searches of homes. *See United States v. Haddix*, 239 F.3d 766, 767 (6th Cir. 2001). This general prohibition, however, does not apply where the police obtain voluntary consent from the individual whose property is searched or from a third party who possesses common authority over the premises. *See United States v. Gillis*, 358 F.3d 386, 390 (6th Cir. 2004) (citing *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990)). "Common authority is not to be implied from a mere property interest that a third party has in the property, but from 'mutual use . . . by persons generally having joint access or control for most purposes.'" *Id.* (quoting *United States v. Matlock*, 415 U.S. 164, 172 n. 7 (1974)).

Here, the district court found that Jobe had actual authority to consent to the search. Ables first argues that Jobe lacked authority to consent to a search of his residence. Ables next contends that to the extent the police officers were confronted with an ambiguous situation, they had a duty to inquire further about Jobe's authority and failed to do so here.

Ables' arguments miss the mark. While Jobe indicated to the officers that the trailer belonged to Ables and that she did not have a key, she also indicated that she lived with Ables for seven or eight months as his girlfriend, kept her belongings there, shared the master bedroom with Ables, seldom left the trailer, and had access to all areas within the trailer.

Ables points this court to no authority, and we find none, that suggests it is even relevant that Jobe "indicated to the officers that she did not believe that she had the authority to consent to a search." J.A. 65. Moreover, no precedent suggests that not having a key to a residence should override all other indicia that Jobe had the requisite control of the residence to consent to the search.

Indeed, given that Jobe told officers she lived with Ables for seven or eight months, that she seldom left the trailer, and that she had access to all areas, her not having a key to the residence suggested to the officers that she did not *need* a key.

Here, Jobe's description of her mutual use of the property was enough for the officers to establish her actual authority to consent. It was not, as Ables contends, an ambiguous situation that required further inquiry. *See, e.g., United States v. Grayer*, 232 F. App'x 446, 449 (6th Cir. 2007) (finding that "officers were not confronted with an ambiguous situation" about consent when person consenting was "the homeowner's live-in girlfriend"); *United States v. Moore*, 917 F.2d 215, 222-23 (6th Cir. 1990) (finding that live-in girlfriend was a joint occupant of the defendant's residence that had common authority over the premises to consent to search of the premises); *United States v. Kirkpatrick*, No. 97-5583, 1998 WL 869978, at *3 (6th Cir. Dec. 1, 1998) (finding that girlfriend could validly consent to search of residence that she shared with the defendant and in which she had access to all of its areas).

Accordingly, the district court did not err when it denied Ables' motion to suppress, and therefore the evidence and the statements at issue appropriately were not suppressed as fruit of the poisonous tree.

**Motion for a Mistrial**

We employ an abuse-of-discretion standard when reviewing a district court's denial of a motion for a mistrial. *See United States v. Cope*, 312 F.3d 757, 779 (6th Cir. 2002). During the government's cross-examination of Ables, counsel asked Ables if his son was "the young man out in the hallway wearing glasses?" Defense counsel objected on grounds that the "prosecutor is

testifying," but the district court overruled that objection. On the basis of that single question, Ables moved for a mistrial the following day that the district court subsequently denied.

Ables argues the question was improper for two reasons: (1) it permitted the jurors to rely upon their own investigation by suggesting they rely upon their observation of Ables' son in the hallway and (2) it shifted the burden to Ables by raising in the jury's mind the question of why a son, who was available in the hallway, did not testify. His arguments fail.

We have explained the standards for evaluating such claims:

> We evaluate claims of prosecutorial misconduct using a two-step inquiry. "First, the court must determine if the government's statements were improper." *United States v. Abboud*, 438 F.3d 554, 584 (6th Cir. 2006). If we determine that the statements were in fact improper, then we "must decide whether the statements were flagrant." *Id*. The "flagrancy inquiry" involves four factors: (1) whether the remarks tended to mislead the jury or to prejudice the accused [including whether the trial judge gave an appropriate cautionary instruction to the jury]; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused. *Id.* (citation omitted).

*United States v. Roach*, 502 F.3d 425, 432 (6th Cir. 2007) (alteration in original); *see also United States v. Wiedyk*, 71 F.3d 602, 607-08 (6th Cir. 1995) (applying same analysis to review a district court's denial of a mistrial with respect to two improper questions asked by a prosecutor).

### *Whether question was improper*

We begin, and end, our analysis of Ables' prosecutorial misconduct claim by considering whether the prosecutor's question was improper. *See United States v. Barnett*, 398 F.3d 516, 522 (6th Cir. 2005). "It is axiomatic that a defendant in a criminal trial need not testify or produce any evidence, and that a prosecutor may not comment on the absence of such." *United States v. Bond*, 22 F.3d 662, 669 (6th Cir. 1994) (citing *United States v. Drake*, 885 F.2d 323, 323 (6th Cir. 1989)).

However, a prosecutor may "summarize the evidence and comment on its quantitative and qualitative significance." *Id*. "Although a prosecutor is entitled to comment on a defendant's failure to call witnesses to contradict the government's case, the prosecutor must avoid commenting in such a way that he treads on the defendant's constitutional rights and privileges." *United States v. Clark*, 982 F.2d 965, 968 (6th Cir. 1993) (citation omitted). We recognize that improper burden-shifting is a violation of due process. *See United States v. Newton*, 389 F.3d 631, 638 (6th Cir. 2004), *vacated on other grounds*, 546 U.S. 803 (2005).

The question at issue was not improper. Ables chose to take the stand and testify on his own behalf. Ables himself repeatedly raised the issue of his son when he claimed that the ammunition found in his trailer was his son's, not his. Both parties agree that the government's line of questioning about Ables' son under such circumstances was permitted as a general matter.

Here, it is undisputed that the government did not directly comment on Ables' failure to call his son to testify, yet Ables argues that the government's isolated question about whether the son was in the hallway was itself grounds for a mistrial. That argument fails.

Read in context, the disputed question came at the end of a series of questions that related to the size of Ables' son and did not directly suggest anything about his son not testifying. Moreover, the question was not intended to shift the burden of proof, suggest the jury rely on evidence outside the record, or otherwise mislead the jury or prejudice the defendant. Rather, the disputed question was a part of a line of questioning intended simply to dispel Ables' own suggestion that the ammunition was his son's, not his.

Even if the question suggested the son could have testified but did not, it would not have been improper given that Ables invited the question based on his trial strategy of arguing the ammunition was his son's, not his. *See Barnett*, 398 F.3d at 522-23 (prosecutor's remarks must be considered within the context of the trial as a whole, with attention to whether they may have been invited by defense counsel's conduct). Indeed, a prosecutor is allowed to comment on the failure of a defendant to call corroborating witnesses for its theories under such circumstances. *See Bond*, 22 F.3d at 669 (finding prosecutor's comments about lack of alibi witnesses did not warrant reversal); *Newton*, 389 F.3d at 638 (finding no misconduct in prosecutor's reply to defense insinuations that government hid evidence from the jury); *United States v. Beddow*, 957 F.2d 1330, 1336-37 (6th Cir. 1992) (prosecutor's comment about failure of defendant's brother to testify in support of defendant's claim that brother loaned him money did not warrant reversal); *Traylor v. Price*, 239 F. App'x 235, 242 (6th Cir. 2007) (stating "the prosecutor is permitted to comment on the improbability of the defendant's theory once a defendant makes an issue legally relevant by advancing that theory"); *see also United States v. Schultz*, 698 F.2d 365, 367 (8th Cir. 1983) (stating "[t]he prosecutor is free to comment on the failure of a defendant to call an available alibi witness") (citation omitted); *United States v. Bubar*, 567 F.2d 192, 199 (2d Cir. 1977) (holding "[t]he prosecutor is entitled to comment on the defendant's failure to call witnesses to contradict the factual character of the government's case, . . . as well as his failure to support his own factual theories with witnesses") (citations omitted); *but see United States v. Hernandez*, 145 F.3d 1433, 1439 (11th Cir. 1998) (stating "a prosecutor may not comment about the absence of witnesses or otherwise attempt to shift the burden of proof").

Accordingly, the question at issue was not improper and therefore the district court did not abuse its discretion in denying Ables' motion for a mistrial. There is no need for us to address whether the question was flagrant because the question was proper in the first instance. On that basis alone, we affirm the district court's denial of Ables' motion for a mistrial.

## CONCLUSION

For all the aforementioned reasons, we AFFIRM the judgment of the district court.